IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------X

MFS, INC.,                                :

     Plaintiff,                      :

v.                                        :          Civil Action No. 08CV2508

THOMAS A. DILAZARO, Individually,         :
  et al.
                                          :

     Defendants.                     :
------------------------------X


**PLAINTIFF MFS, INC.'S AMENDED RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**


Thomas J. Zagami                      Wayne C. Stansfield
Attorney I.D. No. 07799               Attorney I.D. No. 81339
THOMAS J. ZAGAMI, P.A.                REED SMITH LLP
Suite 650                             2500 One Liberty Place
10500 Little Patuxent Parkway         1650 Market Street
Columbia, MD 21044                    Philadelphia, PA 19103
410-339-6741                          215-851-8100
410-832-5647 (facsimile)              215-851-1420 (facsimile)

### TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................. 1

II.    RESPONSE TO STATEMENT OF FACTS IN THE MOTION................................. 4

III.   STATEMENT OF ADDITIONAL FACTS PRECLUDING ENTRY OF
        SUMMARY JUDGMENT ........................................................... 4

       A.     BACKGROUND ...................................................................... 5

              (i)     Brief History Of The Mineral Wool Plant.................................. 5

              (ii)    Brief Description Of Mineral Wool And The Manufacturing Process....... 5

       B.     THE DISTINCTION BETWEEN AN ODOR AND A MALODOR .............. 7

       C.     THE FIELD ENFORCEMENT ORDER ISSUED TO MFS ........................... 9

       D.     THE NOVS FOR ALLEGED MALODOR ISSUED TO THE MINERAL
            WOOL PLANT ...................................................................... 13

              (i)     Sources Of Malodor In The Vicinity Of The Mineral Wool Plant........... 20

              (ii)    The $H_2S$ Ambient Air Monitoring Data...................................... 22

       E.     THE CONSENT DECREE BETWEEN EPA AND MFS............................. 23

       F.     THE CONTINUING PREJUDICE TO MFS AND MFS' PETITIONING OF
            THE SECRETARY OF PADEP FOR REDRESS............................................ 30

       G.     THE BRIEFING MEMORANDUM SUBMITTED TO THE SECRETARY
            IN ADVANCE OF THE DECEMBER 2007 MEETING................................ 36

       H.     THE JANUARY 2008 DRAFT TITLE V PERMIT ......................................... 41

              (i)     Condition 028 Of The January 2008 Draft Permit..................................... 43

              (ii)    Condition 027 Of The January 2008 Draft Permit..................................... 44

       I.      MFS' SALE OF MACHINERY, EQUIPMENT AND PARTS..................... 47

       J.      THE JANUARY 2009 DRAFT PERMIT ......................................... 47

       K.     MFS' DAMAGES ...................................................................... 48

IV.   ARGUMENT.................................................................................. 49

**A.**   **STANDARD OF REVIEW** ................................................................. 49

**B.**   **THE DEFENDANTS HAVE MISSTATED MFS' CLAIMS THROUGHOUT THEIR MOTION** ................................................. 50

**C.**   **MFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS** ............................................................................. 52

    (i)   Statute Of Limitations Was Not Pled As An Affirmative Defense In The Defendants' Answer ........................................................................ 52

    (ii)   The Limitations Defense Was Not Raised As Early As Practicable ........ 52

    (iii)   MFS Is Entitled To Equitable Tolling Under The Continuing Violations Doctrine .................................................................................... 53

        (a) The Subject Matter Factor Supports Tolling In This Case ................. 55

        (b) The Frequency Factor Supports Tolling In This Case ....................... 56

        (c) The Permanence Factor Supports Tolling In This Case .................... 57

        (d) The Equities Also Weigh In Favor Of Applying The Continuing Violations  Doctrine In This Case ........................................ 58

    (iv)   The Defendants Are Not Prejudiced By Application Of The Continuing Violations Doctrine Under The Circumstances Of This Case ................. 60

**D.**   **MFS HAS ESTABLISHED A CLAIM FOR CONSTITUTIONAL RETALIATION AGAINST THE DEFENDANTS** ......................................... 61

    (i)   Defendants Have Conceded That MFS Has Met The Threshold Requirement For Its First Amendment Retaliation Claim And The Other Two Requirements Are Questions Of Fact ............................................. 62

    (ii)   Whether MFS Suffered An Adverse Action Is A Disputed Fact In This Case ........................................................................................... 62

        (a) Examples Of Other Adverse Actions Asserted By MFS And Supported By The Record .............................................................................. 63

        (b) Defendants Have Mischaracterized MFS' Objections To The Conditions In The January 2008 Draft Permit .................................... 64

(iii) The Defendants Have Failed To Meet Their Burden Of Showing That The Same Adverse Action Would Have Occurred In The Absence Of The Protected Conduct.................................................................................. 65

    (a) Material Facts Are In Dispute As To Whether The Defendants' Concerns Regarding Malodor Were Valid Or Not ............................. 67

    (b) Material Facts Are In Dispute As To Whether The Defendants' Concerns Regarding MACT Were Valid Or Not ................................. 68

    (c) Material Facts Are In Dispute As To Whether The "Permit Shield" Was Really A "Permit Sham"........................................................... 70

(iv) A Reasonable Jury Could Find In Favor Of MFS On The Disputed Facts .. .................................................................................................................... 71

**E.   MFS CAN ESTABLISH A CLAIM FOR VIOLATIONS OF ITS DUE PROCESS RIGHTS**................................................................................. 74

    (i) MFS Can Establish Cognizable Property And Liberty Interests Under The Due Process Clause.................................................................................. 74

    (ii) MFS Can Establish A Claim For Violations Of Its Procedural Due Process Rights ......................................................................................................... 75

    (iii) MFS Can Establish A Claim For Violations Of Its Substantive Due Process Rights......................................................................................................... 80

        (a) The Defendants Have Failed To Identify Sufficient Support For Their Contentions ........................................................................................ 86

**F.   MFS CAN ESTABLISH A CLAIM FOR VIOLATIONS OF ITS EQUAL PROTECTION RIGHTS** ................................................................................ 88

    (i) The Defendants Intentionally Disparate Treatment Of MFS Compared To Others Similarly Situated ......................................................................... 90

        (a) Other Sources In The Vicinity Of The Mineral Wool Plant............... 90

    (ii) There Is No Rational Relationship Between The Defendants' Treatment Of MFS And The Asserted Governmental Interest ................................... 93

G.   DEFENDANTS HAVE NOT SUSTAINED THEIR BURDEN OF PROOF
      ON THE ISSUE OF QUALIFIED IMMUNITY ............................................. 93

      (i)    Defendants Bear The Burden Of Proof On The Issue Of Qualified
             Immunity ................................................................................................ 94

      (ii)   Qualified Immunity Standards ................................................................ 94

      (iii)  MFS Has Shown That Defendants' Conduct Violated MFS' Constitutional
             Rights .................................................................................................... 96

      (iv)   Defendants Understood That Their Conduct Was Unlawful And Such
             Conduct Would Have Been Known To Be Unlawful To An Objective
             State Official ......................................................................................... 96

      (v)    Material Facts Are In Dispute That Preclude Summary Judgment On The
             Basis Of Qualified Immunity ................................................................. 98

      (vi)   Factual Questions As To Motive And Intent Also Preclude Summary
             Judgment On The Issue Of Qualified Immunity ....................................... 99

H.    DEFENDANTS' CLAIM OF SOVEREIGN IMMUNITY AS TO COUNT III
      IS A FACTUAL ISSUE FOR THE FINDER OF FACT ............................. 101

V.   CONCLUSION ................................................................................................. 103

## TABLE OF AUTHORITIES

**Cases**

Abbott v. Latshaw, 164 F.3d 141 (3d Cir. 1998)................................................................ 78, 96

Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970)............................................. 50

Alvin v. Suzuki, 227 F.3d 107 (3d Cir. 2000) ........................................................................ 80, 96

Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996)............................................................. 83

Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001) ...................................................... 93, 101

Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ........................................ 79

Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000) ....................................................... 94

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S. Ct. 1262 (1993))............................................................... 50

Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ....................... 75

Boria v. Bowers, 2009 WL 90242 (E.D. Pa. 2009) ................................................................. 98

Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153 (3d Cir. 1989)................................. 53

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) ......................................... 49, 50

Centifanti v. Nix, 865 F.2d 1422, (3d Cir. 1989).................................................................... 53

City of Los Angeles v. David, 538 U.S. 715 (2003)................................................................. 75

Collins v. Harker Heights, 503 U.S. 115, 112 S.Ct. 1061 (1992)............................................. 81

Commission v. Pleasant Township, 388 A.2d 756 (Pa. Cmwlth. 1978)..................................... 101

Continental Coal, Inc. v. Cunningham, 511 F. Supp. 2d 1065 (D. Kan. 2007)........................... 74

County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708 (1998) ............................... 81, 97

Courtney v. La Salle University, 124 F.3d 499 (3d Cir. 1997).................................................. 53

Cowell v. Palmer Township, 263 F. 3d 286 (3rd Cir. 2001) .................................................... 53

Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584 (1998) ..................................... 95, 96, 100

Curley v. Klem, 298 F.3d 271 (3d Cir. 2002)............................................................... 49, 95, 98

Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ............................... 80

Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2008)..............................................85

Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411 (3d Cir. 2003)..........................97

Eichelman v. Lancaster County, 510 F. Supp. 2d 377 (E.D.Pa. 2007)..............................79

Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004) ..................... 61, 62, 96

Estate of Shuman v. Weber, 419 A.2d 169 (Pa. Super. 1980)........................................102

Fishman v. Davidson, 369 Pa. 39, 85 A.2d 34 (1951)..................................................102

Glenn v. Barua, 252 Fed.Appx. 493 (3d Cir.2007).........................................................89

Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000)...............................................................95

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) ..................................... 89, 97

Horsehead Resource Development Company v. PaDEP, 780 A.2d 856 (Pa.Cmwlth. 2001) ...... 38

Hui v. City of Philadelphia Parking Authority, 913 A.2d 994 (Pa. Cmwlth. 2006)................... 102

Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority, 103 F.3d 1165 (3d Cir. 1997) ................................................................................................. 74

Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151 (1995)..............................................100

Kaplan v. Chertoff, 481 F. Supp. 2d 370 (E.D. Pa. 2007) ...............................................88

Karnes v. Skrutski, 62 F.3d 485 (3d Cir.1995)............................................................100

La Frankie v. Miklich, 618 A.2d 1145 (Pa. Cmwlth. 1992).............................................102

Larsen v. State Employee's Retirement System, 553 F.Supp.2d 403 (M.D. Pa 2008) ..................................................................... 53, 54, 56, 57

Locurto v. Safir, 264 F.3d 154 (2d Cir.2001) ................................................. 95, 99, 100

Lonzetta Trucking & Excavating Co. v. Schan, 144 Fed. Appx. 206, 2005 WL 730363 (3d Cir. 2005) ........................................................................................ 84

M&M Stone Co. v. PaDEP, 2008 WL 4467176 (E.D. Pa. 2008)................... 74, 81, 89

Mathews v. Eldridge, 424 U.S. 319 (1976) ......................................................... 75, 76

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986). 50

McKinnon v. Kwong Wah Restaurant, 83 F. 3d 498 (1st Cir. 1996)...........................52

Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990) ................................................................ 2

Miles v. Pennsylvania Department of Conservation and Natural Resources, 2009 WL 506371
 (M.D. Pa. February 27, 2009) ................................................................ 60

Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999) ...................................... 74

Monteiro v. City of Elizabeth, 436 F.3d 397 (3rd Cir. 2006) .................................... 50, 95, 98, 99

National R.R Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.E.2d 106 (2002)
 ................................................................................................ 60

Nicolete v. Caruso, 315 F.Supp.2d 710 (W.D. Pa 2003) .......................................... 53, 59

Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) ...................... 89

Odd v. Malone, 538 F.3d 202 (3d Cir.2008) ............................................................ 94

Pappas v. City of Lebanon, 331 F. Supp. 2d 311 (M.D. Pa. 2004) ............................. 80

Patrick v. Great Valley School District, 296 Fed. Appx. 258, 2008 WL 4516690
 (3d Cir. 2008)................................................................................................ 82, 83

Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) .......................... 75

Pearson v. Callahan, 129 S.Ct. 808 (Jan. 21, 2009)................................................ 95

Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81 (3d Cir. 1982) ........................ 50

Phillips v. County of Allegheny, 515 F.3d 224 (3d. Cir. 2008)................................ 81, 82

Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, (3d Cir. 1994)................ 75

Reilly v. Atlantic City, 532 F.3d 216 (3d Cir. 2008) .............................................. 98

Robinson v. Johnson, 313 F. 3d 128, (3d Cir. 2002), cert. denied, 540 U.S. 826, 124 S.Ct. 48,
 157 L.Ed. 2d 49 (2003).................................................................................. 52

Rossetti v. Busch Entertainment Corp., 87 F. Supp. 2d 415 (E.D. Pa. 2000)................ 50

Rutan v. Republican Party, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) ........ 63

Ryan v. Burlington County, 860 F.2d 1199 (3d Cir. 1988) ...................................... 93

San Jacinto Savings & Loan v. Kacal, 928 F.2d 697 (5th Cir. 1991)........................ 85, 86

Sanford v. Stiles, 456 F.3d 298 (2006) ................................................................ 81

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001) ........................................ 94, 95, 96

Schimes v. Barrett, 2008 WL 857534 (M.D. Pa. March 27, 2008) ....................................... 53, 59

Smith v. Central Dauphin School District, 511 F. Supp. 2d 460 (M.D.Pa., 2007)................. 65, 98

Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183 (3d Cir. 2008)............................. 89

Suppan v. DaDonna, 203, F.3d 228 (3d. Cir. 2000) ........................................................ 61, 73, 96

Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006) .......... 61, 62, 74, 75, 85, 89, 96

United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392
(3d Cir. 2003)................................................................................................................... 81, 84, 97

Village of Willowbrook v. Olech, 528 U.S. 562, 564120 S.Ct. 1073 (2000)........................ 88, 97

Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) ...................... 75

Wolff v. McDonnell, 418 U.S. 539, S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)).......................... 74

Woodwind Estates Ltd. v. W.J. Gretkowski, 205 F.3d 118 (3d Cir.2000)..................................... 84

Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975 108 L.Ed.2d 100 (1990) ........................... 80, 97

**Rules**

Fed. R. Civ. P. 26 (a)(1)............................................................................................................... 53

Fed. R. Civ. P. 56(c) .................................................................................................................... 49

Fed. R. Civ. P. 8(c) ...................................................................................................................... 52

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MFS, INC.,                                     :

      Plaintiff,                          :

v.                                             :          Civil Action No. 08CV2508

THOMAS A. DILAZARO, Individually,              :
  et al.

                                :

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFF MFS, INC.'S AMENDED RESPONSE
## IN OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

The Plaintiff, MFS, Inc. ("MFS"), by and through its undersigned counsel, submits this

Response in Opposition (the "Response") to the Motion for Summary Judgment (the "Motion")

filed by Defendants Sean L. Robbins (in his individual capacity), Thomas A. DiLazaro (in his

individual capacity), Mark Wejkszner (in his individual capacity), and Michael D. Bedrin (in his

individual capacity) (hereinafter referred to collectively as "Defendants") and, in support thereof,

states as follows:

## I.    INTRODUCTION

This case arises from the Defendants' retaliatory, arbitrary, and illegal continuing course

of conduct directed towards MFS, under color of law, so as to both punish MFS and violate its

constitutional and civil rights.  The rights of MFS that have been violated by the Defendants

include, inter alia:  rights under the First and Fourteenth Amendments to the Constitution of the

United States of America (the "Constitution") to petition the government for redress of

grievances without retaliation; rights guaranteed by the Due Process Clause and Equal Protection

Clause of the Fourteenth Amendment to the Constitution; and rights protected by 42 U.S.C. 1983 and §1988.[1]

The record shows that the Defendants have deliberately, arbitrarily and maliciously acted outside the scope of their authority and have pursued, under color of law, a continuous course of wrongful conduct against MFS resulting in a violation of MFS' constitutional and civil rights and causing injury to MFS. The record in this case further shows that the Defendants have deliberately, arbitrarily and maliciously used both a Consent Decree entered into by MFS and the United States Environmental Protection Agency ("EPA") and the Commonwealth's Title V permitting process as pretexts to continue their continuous course of wrongful conduct directed against MFS, under color of law. As explained below, the Defendants' wrongful conduct entailed, among other things:  (i) disseminating false and misleading information about MFS to the public, the press, and government officials; (ii) directing staff to disseminate false and misleading information about MFS to the public, the press and government officials; (iii) exceeding the scope of, and abusing the authority given to them by, state and federal law; (iv) issuing erroneous, improper and/or illegal notices of violation for alleged malodor to MFS; (v) issuing a Field Enforcement Order to MFS, knowing that it was based on a legally deficient notice of violation issued to MFS one year earlier; (vi) impermissibly, arbitrarily and unreasonably re-writing the terms of a Consent Decree between MFS and EPA, after agreeing to it and after it was approved by the U.S. District Court; (vii) interfering with MFS' due process rights to be free to pursue an occupation without undue governmental interference; (viii) interfering with MFS' due process rights to use its property in pursuit of that occupation without

---

[1] The Defendants in this case have been sued only in their individual, as opposed to official, capacities. See Complaint at ¶¶ 7, 8, 9 and 10. See also Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) ("[s]tate officials sued for damages in their [individual] personal capacities are 'persons' under §1983 and therefore subject to suit"), aff'd, 502 U.S. 21 (1991).

undue governmental interference; (ix) imposing illegal, unreasonable, and/or arbitrary conditions during MFS' Title V operating permit renewal process, so as to stonewall and prevent the Mineral Wool Plant from either resuming operations or from being sold to a third party; and (x) violating MFS' equal protection rights to not have the law enforced in a selective fashion against it in retaliation for exercising other rights protected by the United States Constitution. MFS seeks as relief an award of monetary damages, including both compensatory and punitive damages.[2]

In an effort to justify their Motion, the Defendants have:  (i) re-written and mis-characterized the Complaint and claims in this case; (ii) ignored material facts which demonstrate genuine disputes between the parties and which demonstrate that summary judgment in their favor is not appropriate; (iii) identified insufficient facts in the record to support the relief sought in their Motion; and (iv) attempted to shift onto MFS their high burden of proof at this stage of the proceedings.

Contrary to the assertions of the Defendants in their Motion, MFS' claims are well supported by the evidence amassed during discovery and by all reasonable inferences drawn from that evidence, particularly when viewed in a light most favorable to MFS as is required at this stage in the proceedings.  Moreover, as demonstrated in this Response, there are genuine issues of material fact in dispute that preclude the entry of summary judgment in favor of the Defendants.[3]  In addition, the claims asserted in this case involve issues of the Defendants' motives and intent that cannot be resolved at this stage in the proceedings.  It is respectfully

---

[2] Although the Defendants have been sued in their individual capacities, the Defendants are indemnified by the Commonwealth of Pennsylvania if there is a judgment entered in favor of MFS.  See, e.g., DiLazaro's Answer to Interrogatory No. 7, Ex. 2 hereto.

[3] Although the Defendants have admitted many of the allegations of the Complaint in their Answer, as is clear from the Defendants' Motion and MFS' Opposition, the parties have a genuine dispute as to the import and application of those facts to the claims and defenses asserted herein.

submitted, therefore, that the Defendants have failed to meet their high burden and that their

Motion should be denied.

## II.     RESPONSE TO STATEMENT OF FACTS IN THE MOTION

As required by the Court's Motion Policies and Procedures, attached as Exhibit 1 hereto

and incorporated herein by reference is a separate statement, responding to the numbered

paragraphs set forth in the statement of facts in the Defendants' Motion. As a preliminary

matter, it should be noted that the Defendants do not assert in their Motion that the facts that they

set forth are undisputed, and they do not demonstrate how those facts are sufficient to entitle

them to judgment. Moreover, as MFS states in its individual responses contained in Exhibit 1,

most all of the Defendants' statements of fact are either (i) not material or not sufficient to

support the relief which the Defendants seek in their Motion; (ii) not supported by the record to

which the Defendants cite; or (iii) not uncontested by MFS.

## III.    STATEMENT OF ADDITIONAL FACTS PRECLUDING ENTRY OF
        SUMMARY JUDGMENT

Also as required by the Court's Motion Policies and Procedures, MFS has set forth

below, in separate numbered paragraphs, additional facts which MFS contends preclude entry of

summary judgment in favor of the Defendants. MFS believes the length of the additional

statement of facts is warranted given the nature of the claims asserted by MFS in this case and

the volume of supporting evidence adduced during discovery. Finally, and also as required by

the Court's Motion Policies and Procedures, MFS has included specific, as opposed to general,

citations to the record that support each of the statements of fact, including the pages and lines of

any deposition transcripts and the relevant excerpt of any other document that has been cited in

support of each additional statement of fact.

A.    **BACKGROUND**

    (i)    **Brief History Of The Mineral Wool Plant**

1.    At all times relevant, MFS owned a mineral wool manufacturing facility located in Bethlehem, Pennsylvania (the "Mineral Wool Plant"). <u>See</u> Complaint and Defendants' Answer to Complaint (the "Answer"), at ¶¶ 1 and 6.

2.    The Mineral Wool Plant was constructed in 1969-1970 by Bethlehem Steel Corporation ("BethSteel") and, in or about February, 1988, MFS acquired the Mineral Wool Plant from BethSteel. <u>See</u> Report, Ex. 3 hereto, at p. 2, lines 3, 4 and 24.

3.    The Mineral Wool Plant was in continuous operation for approximately 36 years, from 1970 until February, 2006. <u>See</u> Complaint and Answer, at ¶ 14; <u>see also</u> MFS' Answer to Interrogatory No. 1, attached as part of Ex. 56 hereto.

4.    The Mineral Wool Plant:  (i) employed approximately 68 local residents, most of whom were the primary providers for their families; (ii) utilized the services and products of dozens of area businesses; and (iii) supplied its mineral wool to customers for incorporation into finished goods that were sold both nationally and internationally. <u>See</u> Ex. 4 hereto, Letter, dated February 21, 2003, at ¶ 3 on p. 1.

    (ii)    **Brief Description Of Mineral Wool And The Manufacturing Process**

5.    Mineral wool is a non-hazardous fibrous material that was produced at the Mineral Wool Plant from recycled blast furnace slag, which otherwise would have been a landfill waste product. <u>See</u> Hauff Dep., Ex. 5 hereto, at p. 8, lines 11 through p. 9, line 21 and at p. 35, lines 6 through 15; DiLazaro Dep., Ex. 6 hereto, at p. 16, lines 13 through 23.

6.    The Mineral Wool Plant combined the recycled blast furnace slag with silica rock and limestone and, then, melted the combined material in two cupola furnaces at temperatures as

high as $3000^0$ Fahrenheit to produce a molten, lava-like material. See Hauff Dep., Ex. 5 hereto,

at p. 15, line 3 through p. 17, line 25; DiLazaro Dep., Ex. 6 hereto, at p. 15, lines 3 through 12.

     7.    The molten material produced at the Mineral Wool Plant was then discharged

onto rapidly rotating discs which would spin the molten material and cool it into fibers about

one-tenth the diameter of a human hair. See Hauff Dep., Ex. 5 hereto, at p. 18, line 5 through p.

21, line 5; DiLazaro Dep., Ex. 6 hereto, at p. 15, lines 3 through 18.

     8.    The fibers produced at the Mineral Wool Plant were then cleaned using a

proprietary process, collected, baled and shipped by MFS to manufacturers of ceiling tile,

insulation, and fireproofing products. See Hauff Dep., Ex. 5 hereto, at p. 18, line 5 through p.

21, line 5; DiLazaro Dep., Ex. 6 hereto, at p. 15, lines 19 through 22.

     9.    During the manufacturing process described in paragraphs 5 through 8 above,

particulate matter ("PM") was produced from both the operation of the Mineral Wool Plant's two

cupola furnaces and the operation of its mineral fiber handling equipment. See DiLazaro Dep.,

Ex. 6 hereto, at p. 16, line 24 through p. 17, line 12; Mordosky Dep., Ex. 7 hereto, at p. 12, lines

3 through 25; Wejkszner Dep., Ex. 8 hereto, at p. 12, lines 11 through 15, and p. 14, lines 17

through 21.

     10.    The Mineral Wool Plant was one of the newer mineral wool manufacturing

facilities in the United States, and it was unique in its design because of the fact that it comingled

and controlled the PM from both its cupola furnaces and its mineral fiber handling equipment in

a large, single baghouse, whereas the older mineral wool plants in the United States only

controlled PM from their cupola furnaces. See Hauff Dep., Ex. 5 hereto, at p. 21, line 18 through

p. 25, line 22; DiLazaro Dep., Ex. 6 hereto, at p. 19, line 18 through p. 20, line 4; Mordosky

Dep., Ex. 7 hereto, at p. 11, line 24 through p. 13, line 17; Wejkszner Dep., Ex. 8 hereto, at p. 12,

lines 11 through 15 and p. 14, lines 17 through 21; Robbins Dep., Ex. 9 hereto, at p. 151, line 18

through p. 152, line 8; Hauff Aff., Ex. 10 hereto, at ¶ 3.

**B.    THE DISTINCTION BETWEEN AN ODOR AND A MALODOR**

11.    There is a distinction in the law between an odor and a malodor, and not all odors

are malodors. See DiLazaro Dep., Ex. 6 hereto, at p. 44, lines 9 to 15; Mordosky Dep., Ex. 7

hereto, at p. 19, lines 7 through 13; Easley Dep., Ex. 11 hereto, at p. 19, lines 7 through 19;

Bedrin Dep., Ex. 12 hereto, at p. 41, lines 10 through p. 42, line 2.

12.    PaDEP can only lawfully exercise authority over a malodor, and it cannot

lawfully exercise any authority over an odor. See DiLazaro Dep., Ex. 6 hereto, at p. 44, lines 12

through 15; Mordosky Dep., Ex. 7 hereto, at p. 19, lines 11 through 13; Easley Dep., Ex. 11

hereto, at p. 19, lines 10 through 13; Bedrin Dep., Ex. 12 hereto, at p. 41, line 10 through p. 42,

line 2.

13.    A complaint about an odor is not proof that a malodor actually exists. See

DiLazaro Dep., Ex. 6 hereto, at p. 45, lines 17 through 20; Mordosky Dep., Ex. 7 hereto, at p. 19,

lines 14 through 16; Easley Dep., Ex. 11 hereto, at p. 19, lines 14 through 17.

14.    It is not a violation of the law to cause a malodor on your own property. See

DiLazaro Dep., Ex. 6 hereto, at p. 46, lines 13 through 16; Mordosky Dep., Ex. 7 hereto, at p. 19,

line 25 through p. 20, line 4.

15.    The laws relating to malodor, as discussed above in paragraphs 11 through 14,

have been in existence in the Commonwealth of Pennsylvania since the 1970s. See DiLazaro

Dep., Ex. 6 hereto, at p. 46, lines 17 through p. 47, line 2.

16.    In addition, in light of decisions by the Environmental Hearing Board ("EHB")

dating back to the 1990s, PaDEP's established policy since that time has been to have at least

three, as opposed to only two, simultaneous residences complaining about the same odor at the

same time, confirmed by PaDEP as explained in paragraph 15 above.  See paragraph 4 of Section

5.9.3 of Guidance Manual, Ex. 13 hereto; Bedrin Dep., Ex. 12 hereto, at p. 32, lines 10 to 23, and

at p. 33, line 13 through p. 34, line 8; Robbins Dep., Ex. 9 hereto, at p. 96, line 22 through p. 98,

line 15.

      17.    In order for a specific incident of an alleged odor to even possibly be considered

an alleged malodor, each of the following is required:  (i) there must be at least three

complainants from at least three separate residences; (ii) each complainant must be

simultaneously complaining about the same odor at each of their respective residences (as

opposed to smelling something while driving on a road); (iii) a PaDEP air quality inspector must

be present at each residence when the alleged odor is present there; (iv) the inspector must

determine that it is, in fact, a malodor; and (v) the inspector must determine the source or sources

from which it is emanating.  See Mordosky Dep., Ex. 7 hereto, at p. 19, lines 14 through 24;

Bedrin Dep., Ex. 12 hereto, at p. 32, lines 10 through 23 and at p. 33, lines 13 through 21;

Section 5.9.3 of the PaDEP Air Quality Specialist Guidance Manual ("Guidance Manual"), Ex.

13 hereto.

      18.    Even if PaDEP issues a notice of violation ("NOV") alleging that a violation has

occurred, that is merely an allegation and the recipient has no right to appeal it since it is not a

final action of PaDEP.  See Complaint and Answer, at ¶¶ 30(E) and 56(S).

      19.    PaDEP bears the burden of proof that an odor rises to the level of a malodor and,

in turn, that the malodor rises to the level of a public nuisance, as well as the burden of proving

the source or sources of the alleged malodor.  See Complaint and Answer, at ¶ 30(A); Mordosky

Dep., Ex. 7 hereto, at p. 18, line 17 through p. 19, line 24.

20.     The reason for the stringent standard of proof for alleged malodor violations is that, pursuant to applicable law, the PaDEP only has authority to enforce a public as opposed to private nuisance, and a public nuisance must involve an offense that is so prevalent that it annoys the whole community.  See e.g., Commonwealth of Pennsylvania Department of Environmental Resources v. Franklin Plastics Corporation, EHB Docket No. 90-316-CP-E (1996), at the first two full paragraphs on p. 8, and first full paragraph on p. 9, Ex. 14 hereto.

21.     At the times relevant to this case, Ronald Mordosky was the Bethlehem District Supervisor for the Air Quality Program in the Northeast Regional Office ("NERO") of PaDEP, and he educated the air quality inspectors in that office about the law relating to the issuance of NOVs for alleged malodor, as described in paragraphs 11 through 20 above.  See Mordosky Dep., Ex. 7 hereto, at p. 7, lines 3 through 18, and p. 22, lines 4 through 10.

22.     Each of the Defendants holds an advanced degree and has years of experience at NERO.  See DiLazaro Dep., Ex. 6 hereto, at p. 39, lines 17 through 23 and at p. 87, line 14 through p. 88, line 13; Wejkszner Dep., Ex. 8 hereto, at p. 63, lines 3 through 18; Robbins Dep., Ex. 9 hereto, at p. 200, line 21 through p. 201, line 7; Bedrin Dep., Ex. 12 hereto, at p. 11, lines 4 through 23 and at p. 17, lines 17 through 20 and at p. 24, line 22 through p. 25, line 6; DiLazaro's Answer to Interrogatory No. 14, Ex. 55 hereto; Wejkszner Answer to Interrogatory No. 12, Ex. 20 hereto.

### C.     THE FIELD ENFORCEMENT ORDER ISSUED TO MFS

23.     On Friday, January 24, 2003, at approximately 5:10 p.m., Defendant DiLazaro directed that a Field Enforcement Order be served on MFS, requiring a response from MFS on the very next business day.  See Complaint and Answer, at ¶ 56(C).

24.     Defendant Robbins reviewed and agreed with the decision to issue the Field Enforcement Order referenced in paragraph 23 above.  See Robbins Dep., Ex. 9 hereto, at p. 27,

line 10 through p. 28, line 18, and at p. 29, line 20 through p. 31, line 16, and at p. 37, line 18 through p. 38, line 19.

25.     The Field Enforcement Order of January 24, 2003 was based solely on a single Notice of Violation ("NOV") for alleged malodor that had been issued to MFS over one year earlier on November 8, 2001 (for an alleged incident on November 7, 2001). See Complaint and Answer, at ¶ 56(C).

26.     In order for PaDEP to lawfully issue an NOV for malodor, there must be a violation pursuant to the applicable law referenced in paragraphs 11 through 20 above. See Bedrin Dep., Ex. 12 hereto, at p. 25, line 24 through p. 26, line 6.

27.     Defendant DiLazaro caused the NOV for alleged malodor to be issued to MFS on November 8, 2001, and this was the first NOV for alleged malodor ever issued to MFS since it took over operation of the Mineral Wool Plant in 1988. See Complaint and Answer, at ¶ 56(B).

28.     Defendant DiLazaro did not comply with the applicable law, referenced in paragraphs 11 through 20 above, when he directed that the NOV be issued to MFS on November 8, 2001 (for an alleged violation on November 7, 2001) and, therefore, the NOV should not have been issued to the Mineral Wool Plant. See Notice of Violation, dated November 8, 2001, Ex. 15 hereto, at the second line of the second paragraph; Entry for November 7, 2001 in Email, dated November 26, 2003, Ex. 16 hereto; Bedrin Dep., Ex. 12 hereto, at p. 32, lines 10 to 23, and at p. 33, line 13 through p. 34, line 8.

29.     MFS had asked for details about the complaint giving rise to the issuance of the NOV for alleged malodor on November 8, 2001, so that it could look further into the matter, but no additional information was provided to MFS at that time. See Complaint and Answer, at ¶ 56(B).

30.     Because MFS did not receive any additional information about the complaint giving rise to the NOV on November 8, 2001, and because MFS had no right to appeal the NOV (since NOVs are not final actions of PaDEP), the former President of MFS stated that he thought it possible that a temporary malfunction might have caused a malodor to be briefly emitted but no one could be certain since no information was provided to MFS about the specific circumstances of the alleged incident. See Hauff Aff., Ex. 10 hereto, at ¶ 6; Complaint and Answer at ¶ 30(E); see also Statement of Additional Facts, at ¶ 50, infra.

31.     Because MFS' permit allowed the Mineral Wool Plant to by-pass its baghouse and emit directly to the atmosphere during a malfunction without it constituting a malodor violation, if the incident of alleged malodor on November 7, 2001 did occur as a result of a malfunction as discussed in paragraph 30 above, it would not have been a violation. See Hauff Aff., Ex. 10 hereto, at ¶ 6.

32.     Given the circumstances by which the Field Enforcement Order was issued, MFS began petitioning various elected officials to complain about its treatment by Defendant DiLazaro and his staff. See Letter, dated January 28, 2003, Ex. 17 hereto; Letter, dated January 29, 2003, Ex. 18 hereto; Letter, dated January 29, 2003, Ex. 19 hereto; Letter, dated February 21, 2003, Ex. 4 hereto; Hauff Dep., Ex. 5 hereto, at p. 125, lines 9 through 23.

33.     On or about February 21, 2003, in response to MFS' petitioning of governmental officials for redress of its grievances, a Pennsylvania State Representative sent a letter to PaDEP, expressing concerns about the way in which MFS was being treated by Defendant DiLazaro and his staff. See Letter, dated February 21, 2003, Ex. 4 hereto.

34.     Because there was no resolution, on February 24, 2003, which was the last possible day to file an appeal of the Field Enforcement Order, MFS appealed it to the Environmental Hearing Board ("EHB"). <u>See</u> Complaint and Answer, at ¶ 56(M).

35.     By the time of the appeal in February, 2003, Defendant Robbins, who had reviewed and agreed with the issuance of the Field Enforcement Order, was working closely with Defendant DiLazaro on these matters relating to the Mineral Wool Plant, and Defendant Robbins has continued to work on these matters at least through the date of his deposition on March 24, 2009. <u>See</u> Complaint and Answer, at ¶ 56(M); Robbins Dep., Ex. 9 hereto, at p. 38, lines 15 through 19, and at p. 153, lines 12 through 16; <u>see also</u>, MFS' Statement of Additional Facts ("MFS' Facts"), at ¶ 24 above.

36.     During a telephonic hearing on MFS' appeal of the Field Enforcement Order, the EHB Administrative Law Judge: (i) questioned Defendant Robbins about issuing the Field Enforcement Order at 5:10 p.m. on a Friday and requiring compliance by the close of business on the following Monday; (ii) stated that the actions evidence hostility; (iii) cautioned Defendant Robbins that PaDEP should not take similar actions in the future; (iv) stated that the timing of the issuance of the Field Enforcement Order is the most salient thing and that this is not a positive thing for PaDEP; and (v) stated that it appears to the judges on the EHB that Defendant DiLazaro and his staff are acting like "little children." <u>See</u> Complaint and Answer, at ¶ 56(O).

37.     In early 2004, the Field Enforcement Order was withdrawn by PaDEP, and MFS' appeal was dismissed as moot. <u>See</u> Complaint and Answer, at ¶ 56(S); Robbins Dep., Ex. 9 hereto, at p. 40, lines 12 through 17.

38.     Defendant Wejkszner testified that he started working regularly with others in NERO regarding the Mineral Wool Plant when he was New Source Review Chief for the Air

- 12 -

Quality Program headed by Defendant DiLazaro; his involvement continued when he succeeded Defendant DiLazaro as Air Quality Program Manager through at least January 2009. <u>See</u> Wejkszner Dep., Ex. 8 hereto, at p. 9, line 14 through p. 11, line 11; Ex. 20 hereto, Wejkszner's Answer to Interrogatory No. 12; <u>see also</u> MFS' Facts, at ¶ 183, <u>infra</u>.

39.     Defendant Bedrin, who became Regional Director of NERO in June 2004, was being kept informed about what Defendants DiLazaro, Robbins and Wejkszner were doing relating to MFS, and Defendant Bedrin participated in and acquiesced to their conduct in regards to the Mineral Wool Plant. <u>See</u> DiLazaro Dep., Ex. 6 hereto, at p. 64, line 14 through p. 65, line 5; Bedrin Dep., Ex. 12 hereto, at p. 17, lines 5 through 20, and at p. 73, line 7 through p. 74, line 5; Robbins Dep., Ex. 9 hereto, at p. 167, lines 3 through 13.

### D.     THE NOVS FOR ALLEGED MALODOR ISSUED TO THE MINERAL WOOL PLANT

40.     The Defendants have admitted that they have never met PaDEP's burden of proof for malodor with respect to the Mineral Wool Plant, but they have asserted that MFS admitted it was in violation of the malodor law. <u>See</u> Complaint and Answer, at ¶ 30(A).

41.     MFS has never admitted that it was in violation of the malodor law of the Commonwealth of Pennsylvania. <u>See</u> Hauff Aff., Ex. 10 hereto, at ¶ 5.

42.     There has never been any adjudication resulting in a finding of fact that the Mineral Wool Plant has ever been in violation of the malodor laws of the Commonwealth of Pennsylvania or has ever been the source of any malodor. <u>See</u> Complaint and Answer, at ¶ 30(B); <u>see also</u> DiLazaro's Answer to Interrogatory No. 6, Robbins Answer to Interrogatory No. 1, and Bedrin's Answer to Interrogatory No. 8, collectively Ex. 21 hereto.[4]

---

[4] Those Defendants were asked the following Interrogatory: "If you contend that there has ever been any adjudication resulting in a finding of fact that the Mineral Wool Plant is or has been the source of any malodor, identify and describe each such alleged adjudication and, include in your answer, the date of the alleged

43.     The Defendants have admitted that any action taken by MFS to address alleged malodor reasonably could be interpreted as being done by MFS so as to appease the Defendants, as opposed to being an admission of any liability. See Wejkszner Dep., Ex. 8 hereto, at p. 25, lines 8 to 10 and at p. 52, line 24 through p. 53, lines 1 to 2 and 11 to 16.; Bedrin Dep., Ex. 12 hereto, at p. 98, line 21 through p. 99, line 5; see also Hauff Aff., Ex. 10 hereto, at ¶ 5.

44.     The only NOVs for alleged malodor issued to MFS were concentrated in a very brief period of time during the Mineral Wool Plant's 36-year history of operations, and at a time when MFS had both contested the Field Enforcement Order and petitioned government officials for redress of grievances against the Defendants. See Complaint and Answer, at ¶ 30(C); Hauff Dep., Ex. 5 hereto, at p. 125, lines 3 through 23; Hauff Aff., Ex. 10 hereto, at ¶ 7.

45.     MFS did not receive any NOVs for alleged malodor between April 1988 and November 7, 2001, between November 9, 2001 and February 3, 2003, or March 2004 and February 17, 2006 (the date the Mineral Wool Plant ceased operations). See Complaint and Answer, at ¶ 30(C); Email, dated November 26, 2003, listing NOVs for alleged malodor, Ex. 16 hereto; Bedrin Dep., Ex. 12 hereto, at p. 64, lines 5 through 10.

46.     According to PaDEP's records, the Mineral Wool Plant has received seven NOVs for alleged malodor (citing 13 alleged incidents at 13 specific times) over approximately 12,000 manufacturing days between 1970, when it began operations, and February 17, 2006, when it ceased operations. See Hauff Aff., Exhibit 10 hereto, at ¶ 7.

47.     Of the thirteen specific incidents of alleged malodor identified in the NOVs referenced in paragraph 46 above, ten are legally deficient on their face because those NOVs were based on a single complainant. See Email listing number of complainants, dated November

---

adjudication, the court or other body before which the matter was allegedly adjudicated, and the disposition of the alleged adjudication." Each of them responded that they made no such contention. The attached exhibit includes the redacted Interrogatory and Answer since Defendants did not repeat the Interrogatories in their Answers.

26, 2003, Ex. 16 hereto; Copies of NOVs for November 8, 2001, February 13, 2003, March 4,

2003, July 5, 2003, July 11, 2003, August 24, 2003, September 20, 2003, November 29, 2003,

December 21, 2003, and January 24, 2004[5]; collectively attached as Ex. 22 hereto; Mordosky

Dep., Ex. 7 hereto, at p. 19, lines 14 through 24; Bedrin Dep., Ex. 12 hereto, at p. 32, lines 10

through 23 and at p. 33, lines 13 through 21.  See also Statement of Additional Facts, at ¶¶ 11

through 22, supra.

48.     Other than the NOV that was part of the Field Enforcement Order that PaDEP

ultimately withdrew, MFS had no right to appeal any of the NOVs for alleged malodor which

had been issued to the Mineral Wool Plant.  See Complaint and Answer, at ¶¶ 30(E) and 56(S);

see also Statement of Additional Facts, at ¶¶ 23 through 39, supra.

49.     Defendants DiLazaro and Robbins knew from the proceedings in the appeal of the

Field Enforcement Order discussed in paragraphs 23 through 39 above that, although MFS could

not appeal the other NOVs for alleged malodor, MFS nevertheless contested the legal validity of

all of the NOVs for alleged malodor that had been issued to the Mineral Wool Plant.[6]  See Notice

of Appeal at ¶¶ 7b, 7c, and 8, Ex. 23 hereto; Letter, dated February 21, 2003, at ¶¶ 1, 2, and 3 on

p. 2, Ex. 4 hereto; Hauff Aff., Ex. 10 hereto, at ¶ 5.

50.     Defendants Bedrin and Wejkszner also were aware that:  (i) MFS was contesting

the alleged malodor issue; (ii) there had never been an adjudication of the malodor issue; and (iii)

PaDEP never met its burden of proving that MFS was a source of malodor in accordance with

applicable law.  See Complaint and Answer, at ¶ 30(B); Wejkszner Dep., Ex. 8 hereto, at p. 25,

---

[5] One NOV for alleged malodor issued to MFS cited 7 alleged incidents at 7 different dates and times, and it was issued months after each of the alleged incidents supposedly occurred.  See NOV, dated February 24, 2004, attached as part of Ex. 22 hereto.

[6] As discussed above, an NOV is not a final action and is not appealable whereas a Field Enforcement Action is a final action and is appealable.  See Statement of Additional Facts, at ¶¶ 18 and 48.

lines 8 through 10; Bedrin Dep., Ex. 12 hereto, at p. 41, line 10 through p. 42, line 2; Excerpts

from Defendants' Answers to Interrogatories, Ex. 21 hereto.

51.     Defendant Robbins and others on Defendant DiLazaro's staff knew, as early as

November 26, 2003, that six of the nine NOVs for alleged malodor issued to MFS as of

November 26, 2003, were based on just one complainant and were contrary to the applicable law

discussed in paragraphs 11 through 22 above. See Email, dated November 26, 2003, identifying

the number of complainants for each NOV, Ex. 16 hereto.

52.     During its 36 years of operation, the Mineral Wool Plant received only three

NOVs for alleged malodor incidents which allegedly had two (as opposed to the requisite three)

complainants, i.e., the alleged incidents on February 4, 2003, February 6, 2003 and May 12,

2003. See list contained in Email, dated November 26, 2003, Ex. 16 hereto; Complaint and

Answer at ¶ 56(S); see also MFS' Facts, at ¶¶ 15 through 20, supra.

53.     The NOV for the alleged incident on February 4, 2003 (which was issued

February 5, 2003) is either false or in error because the NOV was issued by someone other than

the inspector of the alleged incident, and the inspector had advised the Mineral Wool Plant's

supervisor that, although PaDEP received a complaint about odor and smoke, he detected neither

at MFS. See Miller Aff., Exhibit 24 hereto, at ¶ 3.

54.     The PaDEP employee (Jim Kunkle) who investigated the alleged odor incident on

February 4, 2003, was not an air quality inspector and he had nothing to do with the air quality

program. See Mordosky Dep., Ex. 7 hereto, at p. 21, lines 15 through 22; Email, dated

November 26, 2003, entry for February 4, 2003, Ex. 16 hereto.

55.     The NOV for the alleged incident on February 6, 2003 (which was issued

February 12, 2003) is either false or in error because the NOV contradicts PaDEP's complaint