If a plaintiff alleges a violation of equal protection and is not a member of a recognized suspect class, such as race or gender, it may proceed pursuant to the "class of one" equal protection theory announced by the United States Supreme Court in Village of Willowbrook v. Olech, supra. According to the "class of one" theory, a plaintiff states a claim for violation of the equal protection clause when it alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Id. at 564, 120 S.Ct. at 1074, 145 L.Ed.2d at 1063 (internal citations omitted). Thus, the alleged discrimination must be wholly arbitrary and intentional. See Glenn v. Barua, 252 Fed.Appx. 493, 500 (3d Cir. 2007).

The Third Circuit has held that to state a claim under the "class of one" equal protection theory, a plaintiff must allege that (1) the defendant treated it differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).[35]

This Court has held that this standard was met in the circumstance where a company was intentionally, arbitrarily and irrationally singled out and discriminated against by defendants in suspending the company's mining license in an effort to secure insurance proceeds, which supported a finding of arbitrary unconstitutional conduct. See M&M Stone Co. v. Pa-DEP, 2008 WL 4467176 (E.D. Pa. 2008). Similarly, in Thomas v. Independence Township, 463 F.3d 285 (3d Cir. 2006), the Third Circuit held that plaintiffs had properly stated a claim for a violation of equal protection where the defendants were alleged to have taken selective enforcement actions against a business based upon the race of the owners. Id. at 297-98.

---

[35] Contrary to the authorities cited by the Defendants from other circuits, MFS need not show that the others "similarly situated" be "identical." The Third Circuit authorities discussing equal protection have noted that persons are "similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)).

### (i) The Defendants Intentionally Disparate Treatment Of MFS Compared To Others Similarly Situated

The Defendants assert that MFS has not set forth any evidence that it was treated differently than someone who is *prima facie* identical to it in all relevant aspects. The Defendants than go on to identify very specific criteria that do not constitute "relevant aspects" given the issues in this case. For example, the arbitrary and selective enforcement of the states' malodor laws has no specific application to a mineral wool plant or a facility with a Title V permit, as the Defendants assert. In addition, in defining the asserted "relevant aspects" of MFS, the Defendants also presume as true the very matters that are contested in this case. For example, the Defendants assert that MFS has to identify another facility that "has caused malodors" and that "had not complied with the Mineral Wool NESHAP," – issues that are the subject of genuine factual disputes in this case.

It is respectfully submitted, therefore, that the criteria identified by the Defendants are not the "relevant aspects" referred to in the applicable case law. Indeed, given that there are only approximately ten mineral wool plants in the entire country, no mineral wool plant would be entitled to equal protection using the Defendants' criteria. What is relevant here are sources in the vicinity of the Mineral Wool Plant known to be emitting, or capable of emitting, the type of malodor that the Defendants attributed to the Mineral Wool Plant, and the manner in which the Defendants enforced the state's malodor laws against those other sources as compared to the manner in which the Defendants enforced those same laws against the Mineral Wool Plant.

### (a) Other Sources In The Vicinity Of The Mineral Wool Plant

At all times relevant, the record shows that there were sources other than MFS which were emitting the type of malodor that the Defendants attributed solely and publicly to MFS. See MFS' Facts, at ¶¶ 73 through 90. As discussed previously, there has never been an

adjudication establishing that MFS emitted any malodor or otherwise violated Pennsylvania malodor laws. See e.g., MFS' Facts, at ¶ 42. Moreover, the Defendants have admitted during discovery that they have never met their burden of proof with respect to the alleged malodor issue. See e.g., MFS' Facts, at ¶ 40. MFS, moreover, has affirmatively denied that it has ever been the cause or source of the alleged malodor. See e.g., MFS' Facts, at ¶ 41.

In support of MFS' contention, the evidence shows that, in close proximity to MFS, there were sources emitting the type of malodor that the Defendants have attributed to MFS. MFS contends and the evidence supports that, to the extent the Defendants could have ever met their burden of proof to establish that a malodor existed at all and that the malodor rose to the level of a public nuisance, it is more likely than not that the sources were the publicly owned Bethlehem Sewage Treatment Plant (also known as the Bethlehem Waste Water Treatment Plant), IMS/Waylite and/or the IESI Bethlehem Landfill. See MFS' Facts, at ¶¶ 73 through 90. The evidence further shows that the PaDEP files relating to the publicly owned Bethlehem Sewage Treatment Plant and the IESI Bethlehem Landfill confirm that both facilities had been the subject of complaints for alleged malodor but that PaDEP had never issued any NOVs for alleged malodor to either facility. See MFS' Facts, at ¶¶ 74 through 76. The record also shows that, in January 2007, after MFS had ceased operations, the publicly owned Bethlehem Sewage Treatment Plant admitted that it had been the source of hydrogen sulfide ($H_2S$) malodor in that area for years and that they had been taking measures since at least 2005 to control the $H_2S$ malodor being emitted from their sewage treatment plant. See MFS' Facts, at ¶ 175.

In addition, the record shows that the $H_2S$ ambient air monitoring data, that the Defendants contend in this case supports their assertion that MFS was the source of malodor, actually disproves their contention and further evidences their intentionally different treatment of

MFS. See MFS' Facts, at ¶¶ 81 through 90. It has been established as fact in this case that the data collected by the $H_2S$ ambient air monitoring is not a legally sufficient basis to establish any violation for malodor against anyone. See MFS' Facts, at ¶ 82. In addition, the facts show that the $H_2S$ ambient air monitor was not even in operation at the time that the NOVs for alleged malodor were issued to MFS and, therefore, this could not have been a basis to do so and, at best, is a pretext contrived after the fact to justify their wrongful conduct. See MFS' Facts, at ¶ 83. Moreover, the data collected by the $H_2S$ ambient air monitor established that the readings at the monitor were higher when the wind was blowing toward the monitor from the direction of the Bethlehem Sewage Treatment Plant and the IMS/Waylite facility. See MFS' Facts, at ¶¶ 86 through 89.

In spite of these facts, and in spite of the other factual matters relating to the alleged malodor issue that have been discussed by MFS throughout this response, the Defendants nevertheless have, among other things: (i) persisted to declare publicly that "MFS is definitely a nuisance"; (ii) advised at least one potential purchaser of the facility that there were on-going malodor compliance issues at the facility; (iii) peppered MFS with legally deficient and unfounded NOVs for alleged malodor; (iv) represented falsely to the Secretary of PaDEP that MFS "has a history of malodor problems"; and (v) held MFS' Title V permit hostage to their unsubstantiated malodor claims.

The Defendants' disparate treatment of MFS is further exemplified by singling out MFS publicly as the source of all alleged malodor in the area, without mentioning the other sources known to the Defendants. In addition, the Defendants intentionally steered complainants away from the other facilities in the area and directed them towards MFS. For example, a complainant had advised a PaDEP investigator that, until Defendant DiLazaro made his public comments

regarding MFS, he had believed that the Bethlehem Sewage Treatment Plant was the source of the alleged malodor. This action in steering complainants towards MFS and away from the other sources became part of the Defendants' retaliatory scheme to punish MFS for exercising its protected rights under the Constitution.

      (ii) **There Is No Rational Relationship Between The Defendants' Treatment Of MFS And The Asserted Governmental Interest**

MFS has produced evidence to support its contention that the Defendants' actions were not rationally related to legitimate governmental interest but, instead, were driven by unconstitutional considerations. For example, the record shows that the Defendants had no basis for their actions concerning malodor, and the Defendants' treatment of MFS, particularly compared to the Defendants' treatment of other sources, had no rational relationship to the asserted governmental interest. See MFS' Facts, at ¶¶ 40 through 90. Rather, there is substantial evidence in the record to support that the Defendants' actions were instead motivated by their own personal animus towards MFS, arising from MFS' protected activities as described above in this Response. For all of these additional reasons, therefore, it is respectfully submitted that summary judgment is inappropriate in this case.

**G. DEFENDANTS HAVE NOT SUSTAINED THEIR BURDEN OF PROOF ON THE ISSUE OF QUALIFIED IMMUNITY**

Without supportive facts or detailed argument, the Defendants have asserted that they are entitled to qualified immunity under federal law. However, qualified immunity is an affirmative defense, and the Defendants bear the burden of proving an entitlement to that defense. See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) ("It is the defendants burden to establish that they are entitled to qualified immunity."); Ryan v. Burlington County, 860 F.2d 1199, 1204 n.9 (3d Cir. 1988) ("We note that the burden of establishing qualified immunity is on

the defendant official . . ."). As discussed below, based upon the record of this case, the Defendants have failed to sustain that burden.

### (i) Defendants Bear The Burden Of Proof On The Issue Of Qualified Immunity

In their Motion, the Defendants assert as their only basis for qualified immunity their contention that the inclusion of additional provisions in the draft Title V permit was not objectively unconstitutional. In the preceding sections of this Response, MFS has detailed that the Defendants' unconstitutional conduct is not simply limited to the inclusion of conditions in the draft Title V permit, as the Defendants assert throughout their Motion. As MFS has discussed in each of the prior sections of this Response, and as the record supports, the Defendants' conduct extends much further that the Defendants portray in their Motion. MFS incorporates those prior sections here, by reference, so as to not be repetitive.

### (ii) Qualified Immunity Standards

Qualified immunity, as its name implies, is not an absolute immunity and affords no protection to the "the plainly incompetent or those that knowingly violate the law." See Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000). Such immunity is only appropriate where an official's conduct is "objectively reasonable in light of the constitutional rights affected." Odd v. Malone, 538 F.3d 202, 217 (3d Cir.2008). In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court explained the analytical process for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry . . . .
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries

> concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citation omitted).

As stated in Saucier, the qualified immunity analysis generally requires a two part inquiry. First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right. If so, the court must then determine whether the constitutional or statutory right allegedly violated by the defendant was "clearly established." If the court concludes that the defendant's conduct did violate a clearly established constitutional or statutory right, then it must deny the defendant the protection afforded by qualified immunity. See id.;[36] Curley, 298 F.3d at 277. A court must deny the claim if the law is clearly established, "since a reasonably competent public official should know the law governing his conduct." Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000).

"Qualified immunity does not require a plaintiff to demonstrate that the official's conduct was not reasonable under any conceivable set of circumstances." Monteiro v. City of Elizabeth, 436 F.3d 397, 405-06 (3d Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 593-594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Moreover, "[i]n cases in which a constitutional violation depends on evidence of a specific intent, 'it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.'" Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006) (quoting Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001).

---

[36] Recently, the Supreme Court, in Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565 (Jan. 21, 2009), modified the qualified immunity analysis set forth in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), to remove the mandatory sequential nature of the immunity analysis.

### (iii) MFS Has Shown That Defendants' Conduct Violated MFS' Constitutional Rights

In accordance with the first step in <u>Saucier</u>, MFS has shown throughout this Response that there is substantial evidence to show that the Defendants violated its constitutional rights. MFS incorporates herein its arguments for First Amendment Retaliation at § D, procedural due process under the Fourteenth Amendment at § E(i) and (ii), substantive due process under the Fourteenth Amendment at § E(i) and (iii), and equal protection under the Fourteenth Amendment at § F, so as to not be repetitive.

### (iv) Defendants Understood That Their Conduct Was Unlawful And Such Conduct Would Have Been Known To Be Unlawful To An Objective State Official

The application of the second step in <u>Saucier</u> to the facts of this case likewise precludes summary judgment in favor of the Defendants. The claims and rights asserted in the Complaint have been clearly established by the precedents of the United States Supreme Court, the United States Court of Appeals for the Third Circuit, and the Eastern District of Pennsylvania, and would have been known prohibitions to a reasonably objective state official. All of the unlawful actions were prohibited at all relevant times in this case. For example:

- **First Amendment Retaliation:** <u>Crawford-El v. Britton</u>, 523 U.S. 574, 589 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."); <u>Suppan v. Dadonna</u>, 203 F.3d 228 (3d Cir. 2000); <u>Eichenlaub v. Township of Indiana</u>, 385 F.3d 274 (3d Cir. 2004); <u>Thomas v. Independence Township</u>, 463 F.3d 285, 297 (3d Cir. 2006).

- **Procedural Due Process:** <u>Abbott v. Latshaw</u>, 164 F.3d 141 (3d Cir. 1998); <u>Alvin v. Suzuki</u>, 227 F.3d 107, 118 (3d Cir. 2000).

- **Substantive Due Process**: <u>Zinermon v. Burch</u>, 494 U.S. 113, 110 S.Ct. 975 108 L.Ed.2d 100 (1990); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); <u>United Artists Theatre Circuit, Inc. v. Township of Warrington</u>, 316 F.3d 392 (3d Cir. 2003).

- **Equal Protection**: <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); <u>Desi's Pizza, Inc. v. City of Wilkes-Barre</u>, 321 F.3d 411 (3d Cir. 2003); <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006).

The foregoing are merely some of the applicable cases that would put an objectively reasonable state official on notice that their actions were unlawful. There are many other Circuit and District Court opinions that would have put them on notice as well.

The unlawfulness of their actions should have been apparent to a reasonably objective state official in the Defendants' position, and the Defendants themselves have admitted to knowingly exceeding their authority. The record in this case shows that, on a subjective basis, the Defendants were aware that their actions were unlawful. See, e.g., MFS' Facts, at ¶¶ 11 through 20, 162, and 163. The record in this case also shows that the Defendants were notified by MFS of the improper nature of their conduct on repeated of occasions. See, e.g. MFS' Facts, at ¶¶ 36, 122, 128, 167, 171 and Ex. 23 to Response. Since MFS has shown knowing and intentional conduct in violation of clear constitutional principles, the Defendants cannot claim an entitlement to qualified immunity. The Defendants admit in their Motion that, "if the requirements of the law would have been clear, the officer[s] must stand trial."

**(v) Material Facts Are In Dispute That Preclude Summary Judgment On The Basis Of Qualified Immunity**

Even if Defendants could claim some justification for their actions, questions of material fact prevent the Court from entering summary judgment on the basis of qualified immunity. Certainly, the question of whether the Defendants acted reasonably in light of the circumstances is in dispute. As noted above, "the standard for granting or denying a motion for summary judgment does not change in the qualified immunity context." Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002). Consequently, where there are material facts in dispute on issues bearing upon qualified immunity, summary judgment may not be granted.

In Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006), the Third Circuit stated that "[a]lthough qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." Id. at 405. Thus, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." See Reilly v. Atlantic City, 532 F.3d 216, 234 (3d Cir. 2008). This may be particularly true where the material facts are in dispute as to whether "the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them." Smith v. Central Dauphin School Dist., 511 F.Supp.2d 460, 480 (M.D. Pa. 2007); see also Boria v. Bowers, 2009 WL 90242, *8 (E.D. Pa. 2009) ("The normal principles of summary judgment apply when qualified immunity is at issue, and it is inappropriate to grant summary judgment if there are material factual disputes as to whether a constitutional violation has occurred or whether the constitutional right is clearly established.").

### (vi) Factual Questions As To Motive And Intent Also Preclude Summary Judgment On The Issue Of Qualified Immunity

Because there are questions of the Defendants' intent or motive, summary judgment is inappropriate for that reason as well. The Defendants have argued that they merely acted with an intent to protect the public, while MFS has shown clear evidence of retaliatory conduct, evidencing animus and an intent to harm the company. When qualified immunity turns on questions of motive or intent, the question is normally one for the jury. See Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006) (motive and intent are normally questions of fact "that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor.") Id.

In Monteiro, the Third Circuit examined a complaint filed by Monteiro against the president of the city council, Perkins-Auguste, alleging a claim for retaliation under the First Amendment. Monteiro claimed Perkins-Auguste intentionally suppressed his right to speak at a city council meeting. The District Court found that issues of intent precluded summary judgment in favor of Perkins-Auguste. The Third Circuit affirmed and reasoned as follows:

> [I]f Perkins-Auguste acted with an intent to suppress Monteiro's speech on the basis of viewpoint, she violated clearly established law and is not entitled to qualified immunity. In cases in which a constitutional violation depends on evidence of a specific intent, "it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001). Accordingly, the District Court did not err in holding that whether Perkins-Auguste's conduct violated clearly established law depended upon her motivation for ejecting Monteiro from the meeting. Furthermore, it was not error to submit this question to the jury because there was sufficient evidence from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro's viewpoint.
>
> Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of

> fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").
>
>         \*         \*         \*         \*
>
> Monteiro adduced sufficient evidence at trial from which a reasonable jury could conclude that Perkins-Auguste acted with a motive to suppress Monteiro's speech based upon his opposition to the budget. . . . She admitted at trial to having knowledge of a law memorandum of the City of Elizabeth Legal Department setting forth a procedure for ejecting unruly members. . . . The speed with which she determined to eject Monteiro from the meeting, her failure to consult her fellow council members or to negotiate any compromise, and her failure to follow any established procedure could be viewed by a reasonable jury as evidence that Perkins-Auguste's behavior was emotionally charged and motivated by anger and personal animosity, rather than a desire to maintain smooth operation of the meeting. Despite the calm in the meeting room after the recess, Perkins-Auguste persisted in having Monteiro removed, in handcuffs, against his will.
>
> Perkins-Auguste's argument that she could have conceivably constitutionally ejected Monteiro on the basis of his disruptions is unavailing in the face of a jury verdict concluding that she acted with a motive to suppress Monteiro's speech on the basis of viewpoint. Qualified immunity does not require a plaintiff to demonstrate that the official's conduct was not reasonable under any conceivable set of circumstances. See Crawford-El v. Britton, 523 U.S. 574, 593-594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("[T]he policy concerns underlying Harlow do not support Justice Scalia's unprecedented proposal to immunize all officials whose conduct is 'objectively valid,' regardless of improper intent."); see also Locurto, 264 F.3d at 169-170. When a constitutional violation depends on evidence of improper intent, it is sufficient for the plaintiff to "identify affirmative evidence from which a jury could find ... the pertinent motive," in order to survive summary judgment on that issue. Crawford-El, 523 U.S. at 600, 118 S.Ct. 1584.

Id. at 404-06.

As MFS has established claims of wrongful, unconstitutional conduct, sufficient to overcome summary judgment, those claims would necessarily defeat Defendants' claims of qualified immunity as well. See Beers-Capitol v. Whetzel, 256 F.3d at 142 n.15 ("The qualified immunity argument fails, however, because, to the extent that the plaintiffs have made a showing sufficient to overcome summary judgment on the merits, they have also made a showing sufficient to overcome any claim to qualified immunity."). Accordingly, the Defendants' claims of qualified immunity under federal law must be denied on summary judgment as material facts remain in dispute.

### H. DEFENDANTS' CLAIM OF SOVEREIGN IMMUNITY AS TO COUNT III IS A FACTUAL ISSUE FOR THE FINDER OF FACT

In their Motion, the Defendants claim an entitlement to sovereign immunity against MFS' state law claims for intentional interference with contractual relations/prospective advantage. During discovery, each of the Defendants was asked the following interrogatory: "Identify and describe in detail all facts upon which you intend to rely in support of your contention that you are entitled to sovereign immunity on Plaintiff's state law claims." In response, each Defendant stated that they intend to rely upon no facts in support of their affirmative defense of sovereign immunity. Instead, each Defendant asserted that it is a matter of law. See DiLazaro's Answer to Interrogatory No. 2, Robbins' Answer to Interrogatory No. 7, Wejkszner's Answer to Interrogatory No. 6, and Bedrin's Answer to Interrogatory No. 5. collectively attached as Ex. 57 hereto.

Under Pennsylvania law, sovereign immunity is an affirmative defense. Commission v. Pleasant Township, 388 A.2d 756, 758 n.2 (Pa. Cmwlth. 1978). As such, it requires that the officials show that they were acting within the scope of their duties to claim entitlement to that

defense. See La Frankie v. Miklich, 618 A.2d 1145 (Pa. Cmwlth. 1992). As with most affirmative defenses, "it is a general rule of jurisprudence that the party who has the burden of pleading a fact also bears the burden of producing evidence and persuading the fact-finder of its existence." Hui v. City of Philadelphia Parking Authority, 913 A.2d 994, 1001 (Pa. Cmwlth. 2006); see also Fishman v. Davidson, 369 Pa. 39, 85 A.2d 34 (1951) (burden of proving that an employee was acting as the agent of his or her employer is upon the party who asserts such agency). The issue of whether a person is acting within the scope of his duties is generally an issue of fact for the jury. See Estate of Shuman v. Weber, 419 A.2d 169, 172 (Pa. Super. 1980).

For its federal claims, MFS has pled and intends to prove that Defendants acted under color of law. As alternative relief, however, MFS pled a state law claim that will be viable if the jury finds that the Defendants were not acting within the scope of their employment with the PaDEP. The Defendants have not borne their burden of proof on the factual issue of whether they were acting within the scope of their employment for the actions referred to in the Complaint, leaving the issue at this time a question of disputed fact.

Accordingly, MFS' claims under Count III should be submitted to the fact finder as alternative relief. If the jury were to determine that the Defendants acted outside of the scope of their employment when they took the actions referenced in the Complaint, sovereign immunity would not be a bar to recovery under Count III.

## V. CONCLUSION

For all of the reasons stated above, MFS, Inc. respectfully submits that the Defendants' Motion for Summary Judgment should be denied as to all Counts.

<div style="margin-left: 3em;">

Respectfully submitted,

"s"/Thomas J. Zagami
Thomas J. Zagami
Attorney I.D. No. 07799
THOMAS J. ZAGAMI, P.A.
Suite 650
10500 Little Patuxent Parkway
Columbia, Maryland 21044
(410) 339-6741
(410) 832-5647 (facsimile)

"s"/Wayne C. Stansfield
Wayne C. Stansfield
Attorney I.D. No. 81339
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103
215-851-8100
215-851-1420 (facsimile)

Attorneys for Plaintiff

</div>

Dated: July 14, 2009

## CERTIFICATE OF SERVICE

I, Wayne C. Stansfield, Esquire, certify that a true and correct copy of the Plaintiff's Amended Response in Opposition to Defendants' Motion for Summary Judgment has been filed electronically this 14th day of July, 2009, and is available for viewing and downloading from the Federal Court's Electronic Case Files. A copy of the foregoing has been served today upon the following counsel in the manner indicated below:

> Randall J. Henzes
> Pennsylvania Office of Attorney General
> 21 South 12th Street
> Philadelphia, PA  19107
>
> Attorneys for Defendants
> (via ECF system)

                    "s"/Wayne C. Stansfield
                    Wayne C. Stansfield